**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────

NICHOLAS ROBINSON,

                              Plaintiff,

        v.

DAVID HARDER,[1] et al.,                    No. 9:21-CV-01322
                                            (DNH/CFH)

                              Defendants.


─────────────────────────────


**APPEARANCES:**                     **OF COUNSEL:**

NICHOLAS ROBINSON
22-B-0369
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, New York 12788
Plaintiff pro se

Broome County Attorney's Office       JENNIFER L. CHURCH, ESQ.
Broome County Office Building         Assistant County Attorney
60 Hawley Street
P.O. Box 1766
Binghamton, New York 13902
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

              **REPORT-RECOMMENDATION AND ORDER**[2]

───────────────────────

[1] Plaintiff's amended complaint names the "Broome County Sheriff" as a defendant.  Am. Compl. at 1.
Following section 1915 review, the Court added David Harder, the current Sheriff for Broome County, as
the "Broome County Sheriff."  See Dkt. No. 16 at 4 n.2.  Accordingly, the Clerk is respectfully directed to
amend the caption to reflect David Harder as the lead defendant.
[2] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

Plaintiff pro se Nicholas Robinson ("plaintiff"), an inmate who is currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants David Harder, Adam Valls, and David Stanton (collectively, "defendants") violated his constitutional rights under the First, Fourth, and Fourteenth Amendments while he was confined in the Broome County Jail as a pretrial detainee.  <u>See</u> Dkt. No. 15 ("Am. Compl.").  Presently before the Court is defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). <u>See</u> Dkt. No. 41.  Plaintiff opposed, and defendants replied.  <u>See</u> Dkt. Nos. 51, 52. Plaintiff filed a surreply.[3]  <u>See</u> Dkt. No. 53.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

On review of defendants' motion for summary judgment, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party.  <u>See</u> <u>Rattner v. Netburn</u>, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

## A. Plaintiff's Factual Assertions

---

[3] A surreply is not permitted without permission from the Court.  <u>See</u> N.D.N.Y. L.R. 7.1(a)(1) ("A surreply is not permitted.").  However, out of special solicitude to plaintiff's pro se status, the undersigned will grant permission nunc pro tunc and consider plaintiff's submission.  <u>See</u> discussion <u>infra</u> Section II; <u>see also</u> <u>Jones v. Smith</u>, No. 9:13-CV-1004 (GTS/DEP), 2015 WL 1414511, at *8 n.2 (N.D.N.Y. Mar. 27, 2015) (considering the plaintiff's surreply "solely out of special solicitude to his pro se status"); <u>Jacoby v. Conway</u>, No. 10-CV-920, 2012 WL 2401578, at *1 n.1 (W.D.N.Y. June 25, 2012) (granting permission nunc pro tunc for the plaintiff to file a surreply).

"[B]etween the dates of June 6, 2020 and February 10, 2022[,]" "[p]laintiff was housed at the Broome County Jail" "as a pretrial detainee[.]"  Am. Compl. at 4, ¶¶13-14.[4]  During that time, he "was under the care, custody, and control of [David Harder,] the Broome County Sheriff."  Id. at 4, ¶15.

## 1. Conditions of Confinement

Plaintiff alleges that, "[t]hroughout the period of [his] detention[, the] Broome County Jail . . . provided [him] with used underclothes inclusive of socks, underware [sic] and t-shirts."  Am. Compl. at 6, ¶29.  "Such clothing items were stained with fecal matter and seminal fluids or urine from the person whom previously wore these items."  Id.  The Broome County Jail also "provided [plaintiff] with inadequate bedding and sleeping arrangements[,]" including "stained dirty bedding (sheets), a cot . . . too short for his physical stature,[5] and a thin 'yoga' mat to serve as a mattress."  Id. at 7, ¶30.

"Plaintiff filed several grievances concerning the dirty, stained clothing and bedding, as well as the inadequate cot and mattress provided."  Am. Compl. at 7, ¶31.  Although defendants David Harder and Adam Valls acknowledged his complaints, they took "no remedial action[.]"  Id.  "[S]leep[ing] on the above referenced yoga mat and cot" "exacerbated" plaintiff's pre-existing knee and hip injuries, as well as his mental health issues.  Id. at 7, ¶32.  Specifically, plaintiff suffered from "enhanced pain," "insomnia," "anxiety," and "emotional distress."  Id.

## 2. Outgoing Mail

---

[4]  Citations are to the pagination generated by CM/ECF, located in the header of each page.
[5] "At the time of [p]laintiff's intake into the custody fo [sic] the Broome County Jail[, p]laintiff stood 6'-6" tall and weighed approximately 300 lbs."  Am. Compl. at 4-5, ¶17.

Between July 2020 and October 2020, "[p]laintiff wrote several letters to his family and mailed them via [United States Postal Service ("USPS")]." Am. Compl. at 7, ¶34. Plaintiff's family members informed him "on several occasions" that they received his letters "unsealed" and the letters "appeared to have been opened." Id. Plaintiff made "multiple complaints that his outgoing personal mail was being opened and tampered with."[6] Id. at 8, ¶35. Following an investigation, "the Jail [A]dministration determined that the search of [p]laintiff's mail was being wrongfully conducted by [defendants Adam Valls and David Stanton.]" Id. The Jail Administration "assured" plaintiff that Valls' and Stanton's "conduct would be discontinued." Id. at 8, ¶36.

### B. Defendants' Factual Assertions[7]

### 1. Clothing and Bedding at the Facility

Plaintiff was "booked into the [Broome County Jail (the "Facility")] on June 6, 2020." Dkt. No. 41-5, at 3, ¶16. At that time, "[p]laintiff received an Inmate Handbook," which "addresses the Facility's policy and procedures with respect to clothing and linen issued to inmates, as well as the laundry exchange of such items." Id. at 3, ¶¶16-17. "Inmates are issued clean linen and clothing which could be new or used." Id. at 3, ¶17. "The laundry exchange provision specifically instructs inmates on how to remove and replace dirty clothing and linen with clean clothing and linen." Id.

"Plaintiff testified that on various occasions during his incarceration[, the Facility] provided [him with] dirty clothing and linen[s,]" and "when [the Facility] issued [him] new clothing and bed linens to replace the [dirty] ones . . . , the replacement items were

---

[6] "Upon information and belief, no order or probable cause was issued for the search of [p]laintiff's outgoing mail by any court of competent jurisdiction, nor by the administrative officers of the Jail." Am. Compl. at 8, ¶37.

[7] In support of their motion, defendants filed a Statement of Material Facts. See Dkt. No. 41-5.

'washed with piss stains and shit streaks.'"  Dkt. No. 41-5, at 4-5, ¶¶24, 28.  However, "[p]laintiff admitted he was aware that not all inmates receive brand new clothing and linens" and "that the Facility has laundry services to routinely wash inmate clothing and bed linens."  Id. at 4, ¶¶25-26.

Plaintiff "filed a grievance claiming [the Facility] issued [him] 'soiled' clothing from laundry exchange."  Dkt. No. 41-5 at 5, ¶31.  A grievance officer, however, denied plaintiff's grievance because plaintiff "refused to provide any clarification or proof of possession of any soiled clothing or linens when asked."  Id.  The Chief Administration Officer  ("CAO") also denied plaintiff's grievance on the merits.  See id. at 5, ¶32.  "Plaintiff appealed the [CAO]'s decision to the Citizen's Policy and Complaint Review Council[,] which sustained the action taken by the Facility."  Id. at 5, ¶33.

### 2. Bed Size at the Facility

"[D]uring the vast majority of his incarceration[,]" plaintiff slept on a standard inmate bed, "which includes a green mattress on a flat wooden or cement based, depicting the length of approximately 81 inches and width of approximately 33 inches."  Dkt. No. 41-5 at 6, ¶38.  However, for "relatively short durations of time[,]" plaintiff slept "on the bottom of a dorm bunk bed[,]"[8] which measures "approximately 75 inches in length with a width of approximately 31 inches."  Id. at 6, ¶¶40, 42.  "All of the beds [p]laintiff slept on at the Facility were longer than his height, with the exception of . . . the dorm bunk beds which were approximately 4 inches shorter than his height."  Id. at 7, ¶46.  Plaintiff admitted that his feet would hang off the bed, but "not too far[.]"  Id. at 7, ¶47.

---

[8] "Plaintiff was never double-bunked with another inmate during his . . . incarceration, meaning he [never] share[d] a dorm bunk bed with another inmate."  Dkt. No. 41-5 at 6, ¶41.

"On September 15, 2020, [p]laintiff submitted a grievance stating 'I am 6'7" and wish for a tall boy bed and double mattress pertaining to the pain inside my hip.'" Dkt. No. 41-5 at 7, ¶48. That day, Valls advised plaintiff that he could not be issued a "'tallboy bed' or a double mattress since he would need to request that accommodation from the medical unit." Id. at 7, ¶49. "On September 17, 2020, . . . Valls forwarded [p]laintiff's grievance to Mary Rose, a [nonparty] Registered Nurse, for answers specific to medical complaints, including [p]laintiff's request for a 'tall boy bed.'" Id. at 7, ¶50. "On that same date, Ms. Rose [responded] 'Grievant request for a "big boy bed." Physician has to authorize this, and a double mattress is allowed only for special medical conditions, such as pregnancy.'" Id. at 7, ¶51. Shortly after, Valls denied plaintiff's grievance on the merits. See id. at 8, ¶52. Plaintiff appealed Valls' denial, and on September 24, 2020, the CAO denied plaintiff's grievance. See id. at 8, ¶¶52-53. "On September 25, 2020, plaintiff appealed the [CAO]'s decision to the Citizen's Policy and Complaint Review Council," and the Council "denied the same, sustaining the action taken by the Facility." Id. at 8, ¶¶54-55.

### 3. Outgoing Mail

Plaintiff's cause of action as it relates to his outgoing mail "arose during on two unspecified occasions during the timeframe of July to October 2020." Dkt. No. 41-5 at 8, ¶60. "Plaintiff testified that only his girlfriend, Maryanne Tyler, received a letter from him which he believed was open and that this occurred on two occasions." Id. at 9, ¶64. "Plaintiff and Ms. Tyler both admitted his mail could have been opened or torn by workers at the post office." Id. at 9, ¶66.

"On August 4, 2020, . . . Valls received a number of [grievances] from [p]laintiff, including his complaint that his out-going mail was being intercepted by the Facility[.]" Dkt. No. 41-5 at 9, ¶68.  Stanton assisted Valls with the investigation of plaintiff's grievance, and they took the investigation "very seriously."  Id. at 9-10, at ¶¶69-70. "Valls and Stanton interviewed [p]laintiff to obtain additional information regarding [his] complaint[.]"  Id. at 10, ¶70.  "Pursuant to the investigation, . . . Stanton called Ms. Tyler [and she] explained . . . that she received two letters from [p]laintiff which were both slightly torn on the end and she was not sure whether it had been torn by someone at the Facility or damaged in transit."  Id. at 10, ¶71.  "Ms. Tyler stated that she would speak to the postmaster, and . . . Stanton gave her his information and office number so that she could contact him if she had any further issues."  Id.

"On August 5, 2020, . . . Valls completed his investigation and determined that [p]laintiff's out-going mail was not and will not be searched as there was no evidence to suggest this occurred and the Facility did not have an order to search his out-going mail."  Dkt. No. 41-5 at 10, ¶72.  "On that same date, . . . Valls spoke to [p]laintiff and advised him his grievance concerning his out-going mail was investigated and it was denied on the merits[.]"  Id.  Valls also "encouraged [plaintiff] to seek a remedy with the post office."  Id.  "Plaintiff voluntarily accepted . . . Valls' decision in writing" and did not appeal it to the CAO or the Citizen's Policy and Complaint Review Council.  Id. at 10, ¶73.

## II. Legal Standard

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).  As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]"  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[]" . . . .

Id. (citations omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

### III. Discussion

Plaintiff alleges that Harder and Valls violated his Fourteenth Amendment rights by failing to remedy the "unlawful" conditions of his confinement, including the "stained[,] dirty bedding and underclothes" as well as the "inadequate sleeping quarters."  Am. Compl. at 9, ¶40; Dkt. No. 51 at 7.  Plaintiff also brings First and Fourth Amendment claims against Valls and Stanton for "search[ing his] outgoing personal mail, without lawful privilege or other lawful justification[.]"  Am. Compl. at 8, ¶39.  Defendants move for summary judgment, arguing that "nothing from the facts support [p]laintiff's

conclusory allegations that his First, Fourth and Fourteenth Amendment rights were violated and such, a question of fact does not exist."  Dkt. No. 52-1 at 6; see generally Dkt. No. 41-6.

### A. N.D.N.Y. Local Rules

As an initial matter, defendants assert that plaintiff's opposition papers do not comply with the Local Rules and, therefore, should not be considered.  See Dkt. No. 52-1 at 2-4.  Specifically, defendants contend that (1) plaintiff's opposition papers are untimely; and (2) plaintiff failed to properly respond to their Statement of Material Facts. See id.

First, Local Rule 7.1(a)(3) provides that "[t]he Court shall not consider any [opposition papers] that are not timely filed . . . unless good cause is shown."  N.D.N.Y. L.R. 7.1(a)(3).  "However, it is well-established that pro se plaintiffs are 'entitled to certain latitude,' especially when facing a dispositive motion."  McAdoo v. Jagiello, No. 9:10-CV-355, 2011 WL 1577236, at *2 (N.D.N.Y. Apr. 26, 2011) (quoting Jemzura v. Pub. Serv. Comm'n, 961 F. Supp. 406, 415 (N.D.N.Y. 1997), and citing Murray v. Goord, 668 F. Supp. 2d 344, 353 (N.D.N.Y. 2009)).[9]

After defendants filed their motion for summary judgment on May 26, 2023, the Court notified plaintiff that his opposition papers were due on June 16, 2023.  See Dkt. Nos. 41, 43.  On June 5, 2023, plaintiff requested an extension of time to file and serve opposition papers.  See Dkt. No. 47; see also Dkt. No. 53 at 7.  On June 13, 2023, defendants indicated their non-opposition to an extension but asked the Court to reset the deadline for their reply (which was June 23, 2023) to after July 4, 2023.  See Dkt.

---

[9] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

No. 49.  The Court did not respond to plaintiff's or defendants' request, and plaintiff filed his opposition papers on July 12, 2023.  See Dkt. No. 51.  Defense counsel and the Court received the opposition on July 20, 2023.  See id.  Defendants filed a reply on July 28, 2023.  See Dkt. No. 52-1.

The undersigned recognizes that plaintiff's opposition papers are untimely, as an extension of time was never granted by this Court.  However, in light of special solicitude, and because plaintiff's delay did not result in any appreciable harm or prejudice to defendants,[10] plaintiff's response will be considered.  See McAdoo, 2011 WL 1577236, at *2 ("Given the latitude owed to pro se litigants, and in an abundance of caution, [the] plaintiff's [late] response [to the defendant's motion] will be considered."); see also Brown v. City of Syracuse, No. 5:11-CV-668 (FJS/ATB), 2013 WL 1294085, at *1 n.2 (N.D.N.Y. Mar. 28, 2013) (considering the plaintiff's late response, and advising the plaintiff "that the Court will not consider any late filings in the future").  The Court reminds plaintiff that he must abide by all court deadlines.

Second, Local Rule 56.1 requires a party moving for summary judgment to file and serve a Statement of Material Facts.  See N.D.N.Y. L.R. 56.1(a).  "The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue."  Id.  The opposing party is required to file a response to the Statement of Material Facts "admitting and/or denying each of the movant's assertions in matching numbered paragraphs."  N.D.N.Y. L.R. 56.1(b).  "The Court shall deem admitted any

---

[10] The undersigned notes that defendants filed their reply on July 28, 2023, eight days after receiving plaintiff's opposition papers.  See Dkt. No. 52-1.  Under Local Rule 7.1(a)(1), "[t]he moving party must file and serve its reply papers . . . no more than SEVEN (7) DAYS after service of the [nonmoving party's] response papers."  Thus, defendants had sufficient time to file their reply.

properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. (emphasis omitted).

In response to defendants' motion for summary judgment, plaintiff filed a document entitled "Plaintiff's Facts to be Disputed[.]" Dkt. No. 51 at 12-13. This document is not properly responsive to defendants' Statement of Material Facts because it does not admit or deny defendants' "assertions in a short and concise statement, in matching numbered paragraphs." N.D.N.Y. L.R. 56.1(b); see Dkt. No. 51 at 12-13. Instead, this document summarily lists the paragraph numbers that plaintiff acknowledges and the paragraph numbers that he disputes. See Dkt. No. 51 at 12-13. Defendants argue that because plaintiff failed to submit an adequate response to their Statement of Material Facts, the facts set forth in defendants' Statements of Material Facts must be deemed admitted. See Dkt. No. 52-1 at 4.

The undersigned is not required to "'perform an independent review of the record to find proof of a factual dispute[.]'" Prestopnik v. Whelan, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (quoting Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470-71 (2d Cir. 2002)). Although defendants argue, and the Local Rules provide, that the Court shall deem admitted any facts the nonmoving party fails to "specifically controvert," pro se plaintiffs are afforded special solicitude in this Circuit. N.D.N.Y. L.R. 56.1(b); see discussion supra Section II. Accordingly, in deference to plaintiff's pro se status, the Court will independently review the record when evaluating defendants' motion for summary judgment, and "treat [plaintiff's] opposition as a response to" defendants' Statement of Material Facts. Johnson v. Lew, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30, 2017) ("Out of special solicitude to [the p]laintiff as a

pro se civil rights litigant, however, the Court will treat his opposition as a response to [the d]efendant's [ ] Statement, carefully reviewing it for any record-supported disputation of [the d]efendant's [ ] Statement."); see Perry v. Ogdensburg Corr. Facility, No. 9:10-CV-1033 (LEK/TWD), 2016 WL 3004658, at *1 (N.D.N.Y. May 24, 2016) (determining that "although [the p]laintiff failed to respond to the statement of material facts filed by [the d]efendants as required under [the] Local Rule[s], the Court would invoke its discretion to review the entire record when evaluating the parties' respective [m]otions for summary judgment.").

## B. Exhaustion of Administrative Remedies

Defendants argue that plaintiff failed to exhaust his administrative remedies regarding his First and Fourth Amendment claims against Valls and Stanton, which "necessitate[s] a dismissal" of those claims.  Dkt. No. 41-6 at 6 (citing Richardson v. Romano, No. 00-CV-1076 (LEK/DEP), 2003 WL 1877955, at *2 (N.D.N.Y. Mar. 31, 2003)).  Specifically, defendants contend that plaintiff failed to appeal Valls' denial of his grievance relating to his outgoing mail claim.  See Dkt. No. 41-6 at 4-6.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration.[11]  See 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Further, the exhaustion requirement

---

[11] "[T]he PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees."  Baez v. Parks, No. 02-CV-5821 (PKC/DF), 2004 WL 1052779, at *5 (S.D.N.Y. May 11, 2004) (collecting cases).

applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages.  See id. at 524.  "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated."  Adams v. Annucci, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); see Jones v. Bock, 549 U.S. 199, 218 (2007) (explaining that the applicable procedural rules "are defined not by the PLRA, but by the prison grievance process itself").

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court."  Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011).  Nonetheless, "the defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]"  Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).  A defendant satisfies this burden by "establishing . . . that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure.  Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (citing Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003), and Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999)).  "However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable."  Coleman v. Nolan, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)).

There is no genuine dispute that, at all relevant times, Broome County Jail had in place a seven-step grievance procedure.  See Dkt. No. 41-7 at 4; see also Peoples v.

Hrebin, No. 9:19-CV-1600 (GLS/CFH), 2021 WL 4312449, at *4 (N.D.N.Y. July 1, 2021), report and recommendation adopted, 2021 WL 3285005 (N.D.N.Y. Aug. 2, 2021).  First, the inmate must "[a]ttempt to get the issue resolved with the housing officer."  Dkt. No. 41-7 at 4.  Second, "[i]f a resolution cannot be found [the inmate] may request a grievance form from the grievance officer[,]" who "conducts daily unit tours." Id.  The inmate "must file the grievance within [five] days."  Id.  Third, the "grievance will be investigated and [the inmate] will receive a written determination from the grievance coordinator within five (5) business days."  Id.  Fourth, if the inmate is "not satisfied with the grievance coordinator's decision, [the inmate] may appeal the determination to the Corrections Facility Administrator within two (2) business days."  Id. at 2.  Fifth, the inmate "will receive a response within five (5) business days."  Id.  Sixth, if the inmate is "still . . . not satisfied with the determination [the inmate] may appeal within three (3) business days and [the inmate's] grievance will be sent to the State Commission of Correction within three (3) business days."  Id.  Seventh, the inmate "will receive a response from the Commission of Correction within forty-five (45) business days of their receipt of the grievance."  Id.

**1. Whether Plaintiff Exhausted His Administrative Remedies**

Defendants contend that plaintiff's First and Fourth Amendment claims against Valls and Stanton should be dismissed because "[p]laintiff failed to use all the steps of the Facility's grievance policy which resulted in his failure to exhaust his administrative remedies."  Dkt. No. 41-6 at 6.  Defendants assert that plaintiff was aware of the grievance process, and it was always available to him.  See id. at 5-6.  Defendants acknowledge that plaintiff filed a grievance alleging his outgoing mail was being

searched by the Facility, but Valls denied such grievance on the merits and plaintiff

"voluntarily accepted" Valls' decision.  Id.  Defendants argue that despite "fully

underst[anding] he had the opportunity to appeal" Valls' denial of his grievance, plaintiff

failed to do so and, thus, failed to exhaust.  Id. at 6.

   Both Valls and Stanton have submitted sworn declarations in support of their

arguments.  See Dkt. Nos. 41-3, 41-4.  In his declaration, Valls explains that (1) he is

"employed by the Broome County Sheriff's Office as a Grievance Officer and Hearing

Officer for the Broome County Correctional Facility"; (2) on August 4, 2020, plaintiff filed

a complaint "that his out-going mail was being intercepted by the Facility"; (3) he and

Stanton investigated plaintiff's grievance, and "[p]ursuant to the investigation," they

interviewed plaintiff and plaintiff's girlfriend; (4) on August 5, 2020, they completed their

investigation and determined that plaintiff's outgoing mail was not being searched by the

Facility; (5) that same day, he denied plaintiff's grievance on the merits, and plaintiff

voluntarily accepted his decision in writing; and, (6) "[p]laintiff fully understood he had

the opportunity to appeal [the] decision to the Citizen's Policy and Complaint Review

Council as [plaintiff] had done in the past" but did not do so.  Dkt. No. 41-4 at 1-4.

Stanton similarly declares that he assisted Valls with the investigation of plaintiff's

grievance, and they took their investigation "seriously."  Dkt. No. 41-3 at 5, ¶25.

   The record reflects that plaintiff accepted, in writing, Valls' decision.  See Dkt. No.

41-15 at 1; see also Dkt. No. 41-16 at 4.  Further, plaintiff does not dispute that he failed

to appeal Valls' decision to the CAO or the Citizen's Policy and Complaint Review

Council.  See generally Dkt. Nos. 51, 53; see also Dkt. No. 41-18 at 83-85

(acknowledging that he accepted Valls' denial of his grievance); Allen v. Kunkel, No.

3:18-CV-297 (JCH), 2018 WL 3553335, at *2, 5-6 (D. Conn. July 23, 2018) (concluding, where the plaintiff "d[id] not dispute that he failed to fully comply with the . . . administrative remedy procedure," that the plaintiff "failed to properly exhaust his administrative remedies").  Thus, defendants have met their burden of demonstrating that a grievance procedure existed, and that plaintiff failed to exhaust administrative remedies relating to his outgoing mail complaint.  As a result, the undersigned must assess whether administrative remedies were available to plaintiff.

### 2. Availability as to Plaintiff

"[T]he PLRA requires 'proper exhaustion,' which '"means using all steps that the agency holds out, and doing so properly[.]"'"  Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quoting Woodford, 548 U.S. at 90, and Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).  The PLRA's "exhaustion requirement hinges on the 'availability' of administrative remedies[.]"  Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets omitted).  "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  Id.  Availability means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  Id.  (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

There are "three kinds of circumstances in which an administrative remedy . . . is not capable of use to obtain relief."  Ross, 578 U.S. at 643.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id.  (citing Booth, 532 U.S. at 736).  "Next,

an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Plaintiff alleges that Valls "coerced" him into accepting the grievance determination and not pursuing the matter further. See Dkt. No. 41-18 at 84-85 (testifying that "Adam Valls coerced [him]" into signing the decision, given that Valls "came to [his] cell, said, sign this, and [Valls would] work a deal to try to get [him] out of the box"). Reading plaintiff's submissions with due solicitude, the undersigned considers plaintiff's assertions to mean that the grievance process was unavailable to him because Valls "thwart[ed him] from taking advantage of [the] grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. 643-44; see Hubbs, 788 F.3d at 59 (noting that administrative remedies can be considered "unavailable" if the plaintiff can show that he received threats from correction officers preventing him from appealing his grievance).

To successfully allege unavailability, "[a]n inmate must point to some affirmative action by a prison official that prevented the inmate from availing himself of the grievance procedures." Martinaj v. Uhler, No. 9:18-CV-257 (BKS/DJS), 2021 WL 3793769, at *7 (N.D.N.Y. Aug. 26, 2021) (citing Grafton v. Hesse, 783 F. App'x 29, 31 (2d Cir. 2019) (summary order), and Ruggiero, 467 F.3d at 178). This Circuit has "held that verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action." Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011) (citing Hemphill v. New York, 380 F.3d 680,

688 (2d Cir. 2004), and Ziemba v. Wezner, 366 F.3d 161, 162 (2d Cir. 2004)); see also Cicio v. Alvarez, No. 19-CV-9883 (CS), 2022 WL 1003796, at *4 (S.D.N.Y. Apr. 4, 2022) ("Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable.") (citation and quotation marks omitted); Romano v. Lisson, No. 1:16-CV-81 (RJA/MJR), 2022 WL 14687072, at *12 (W.D.N.Y. Sept. 29, 2022) (denying summary judgment where the inmate plaintiff established "a genuine dispute as to whether" administrative remedies were available to him, specifically as to whether the "defendants were thwarting the grievance system through misrepresentation or coercion"), report and recommendation adopted, 2022 WL 14674773 (W.D.N.Y. Oct. 25, 2022).

In Hunter v. Rouse, the inmate plaintiff alleged "that he did not file a grievance because he feared retaliation from [the d]efendants," who he alleged assaulted him. Hunter v. Rouse, No. 9:20-CV-65 (LEK/DJS), 2020 WL 8474744, at *3 (N.D.N.Y. Sept. 17, 2020), report and recommendation adopted, 2021 WL 101083 (N.D.N.Y. Jan. 12, 2021). Specifically, the "[p]laintiff allege[d that one of the defendants] told him that if he told 'anyone what happened, the next time [the plaintiff] won't walk away.'" Id. at *4. This Court determined that the plaintiff's allegations were "more than a generalized fear of retaliation" and, therefore, "sufficiently reasonable to render administrative remedies unavailable." Id.; see also Galberth v. Durkin, No. 9:14-CV-0115 (BKS/ATB), 2014 WL 7409915, at *8 (N.D.N.Y. Dec. 31, 2014) (holding that the defendants' threats that the plaintiff "would be beaten within an inch of his life" if he told anyone about the alleged assault was more than a generalized fear of retaliation and excused the plaintiff's failure to exhaust).

By contrast, "[c]onclusory allegations of intimidation are insufficient to establish the unavailability of administrative remedies[.]"  Medina v. Kaplan, No. 16-CV-7223 (KMK), 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) (citing Khudan v. Lee, No. 12-CV-8147 (RJS), 2016 WL 4735364, at *6 (S.D.N.Y. Sept. 8, 2016)); see Lucente v. Cnty. of Suffolk, 980 F.3d 284, 312-13 (2d Cir. 2020).  "Accusations which are 'unsupported' and 'stand alone' are similarly insufficient."  Medina, 2018 WL 797330, at *5.  Where an inmate plaintiff claimed that "no grievance was filed was due to the fact that [he] felt that there would be retaliation against [him] if [he] did file such documents," this Court concluded that the plaintiff "fail[ed] to allege how any individual prevented him from filing a grievance" and merely stated "a generalized fear of retaliation"; therefore, the Court granted the defendants' motion for summary judgment.  Rodriguez v. Landry, No. 9:20-CV-556 (BKS/TWD), 2020 WL 6747806, at *5-6 (N.D.N.Y. Oct. 26, 2020), report and recommendation adopted, 2020 WL 6743077 (N.D.N.Y. Nov. 17, 2020).

Here, plaintiff has failed to allege any facts beyond his vague allegation that Valls "coerced" him into not pursuing the matter further to support a finding that remedies were unavailable to him due to "machination, misrepresentation, or intimidation."  Dkt. No. 41-18 at 84; Ross, 578 U.S. at 644; see Massey v. City of New York, No. 20-CV-5665 (GBD/DF), 2021 WL 4943564, at *9 (S.D.N.Y. Aug. 30, 2021) (explaining that the plaintiff's "conclusory allegation [that a prison administrator] intimidated [him] fails to serve as an adequate basis" to excuse the plaintiff from exhausting his remedies), report and recommendation adopted, 2021 WL 4459459 (S.D.N.Y. Sept. 29, 2021), aff'd, 2021 WL 5234977 (S.D.N.Y. Nov. 9, 2021); see also Edwards v. DeStafano, No. 13-CV-4345 (JS/JMW), 2023 WL 6594013, at *7 (E.D.N.Y. July 14, 2023) ("[The

p]laintiff's conclusory arguments . . . are insufficient evidence of an actual error, manipulation, conspiracy or scheme that caused [the p]laintiff's grievances to not being filed."), report and recommendation adopted sub nom. Edwards v. DeStefano, 2023 WL 6307341 (E.D.N.Y. Sept. 28, 2023).  Moreover, Valls asserts that he "never advised [p]laintiff that if [plaintiff] accepted [the] decision, [he] would work out a deal to have [plaintiff] removed from the box, also known as the special housing unit."  Dkt. No. 41-4 at 4, ¶19.  Plaintiff has not responded to Valls' declaration.  See generally Dkt. Nos. 51, 53; see also Magassouba v. Cross, No. 08-CV-4560 (RJH/HBP), 2010 WL 1047662, at *10 (S.D.N.Y. Mar. 1, 2010) ("An inmate's perception . . . that the grievance process will be unsuccessful [ ] does not relieve an inmate of the exhaustion requirement.") (collecting cases), report and recommendation adopted, 2010 WL 4908670 (S.D.N.Y. Nov. 30, 2010).  Thus, plaintiff has not demonstrated that Valls' alleged coercion rendered the prison grievance system unavailable to him.

Accordingly, as defendants have met their burden of establishing that no genuine issue of material fact exists concerning plaintiff's failure to exhaust his administrative remedies with respect to his First and Fourth Amendment claims against Valls and Stanton, the undersigned recommends granting defendants' Motion for Summary Judgement as to those claims.

### 3. Dismissal With Prejudice

"Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint."  Brown v. Napoli, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009) (citing Chisholm v. N.Y.C. Dep't of Corr., No.

08-CV-8795, 2009 WL 2033085, at *3 (S.D.N.Y. July 13, 2009)).  "This is so even when the issue is decided on a motion for summary judgment." Mateo v. Corebine, No. 09-CV-4811 (RJH/DCF), 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010) (collecting cases).  However, if an inmate has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile.  See Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004); see also Richard v. LeClaire, 9:15-CV-0006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice."), report and recommendation adopted, 2019 WL 4233184 (N.D.N.Y. Sept. 6, 2019).

The incidents giving rise to plaintiff's First and Fourth Amendment claims against Valls and Stanton occurred between July 2020 and October 2020.  See Am. Compl. at 7, ¶34.  As discussed, plaintiff filed a grievance with Valls on August 4, 2020, and Valls denied the grievance on August 5, 2020.  See supra Subsection III.B.1; see also Dkt. No. 41-4 at 3-4.  Plaintiff was required to appeal to the CAO "within two business days" of receiving Valls' decision.  Dkt. No. 41-16 at 4; see Dkt. No. 41-7 at 4.  Plaintiff's argument that he was "coerced" into not pursing the matter further does not excuse his failure to exhaust within the time period.  Dkt. No. 41-18 at 84; see discussion supra Subsection III.B.2.  Thus, the time for plaintiff to exhaust administrative remedies "has long since expired."  Calderon v. Doe, No. 9:20-CV-0645 (GLS/CFH), 2021 WL 6278740, at *6 (N.D.N.Y. Nov. 24, 2021), report and recommendation adopted, 2022 WL 43918 (N.D.N.Y. Jan. 5, 2022); see Hrebin, 2021 WL 4312449, at *6 (dismissing

with prejudice "because [the] plaintiff's failure to exhaust available remedies relating to the incidents [at the Broome County Jail] giving rise to his present claims—which occurred nearly two years ago—is no longer curable"). As plaintiff's failure to exhaust cannot be remedied at this point, it is recommended that his First and Fourth Amendment claims against Valls and Stanton be dismissed with prejudice.[12] See Richard, 2019 WL 5197041, at *9.

### C. Plaintiff's Fourteenth Amendment Claim Against Harder and Valls

Plaintiff claims that Harder and Valls violated his rights under the Fourteenth Amendment by providing him with "unhygienic clothing and linen[s], and [an] inadequate bed size . . . from the time of June 6, 2020 until February 10, 2022." Dkt. No. 51 at 16. Defendants argue that plaintiff's Fourteenth Amendment claims fail because plaintiff has not demonstrated (1) an objectively, sufficiently serious constitutional deprivation; (2) that Harder and Valls acted with deliberate indifference; and (3) that Harder and Valls were personally involved "with respect to [p]laintiff's allegations of receiving dirty laundry and bed linens at the Facility" or his "inadequate bed claim[.]" Dkt. No. 41-6 at 7-16.

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." Darnell v. Pineiro,

---

[12] Because dismissal of plaintiff's First and Fourth Amendment claims against Valls and Stanton is recommended based on his failure to exhaust administrative remedies, the undersigned need not address the merits of these claims, nor the defenses proffered in response. See Hrebin, 2021 WL 4312449, at *7 ("[B]ecause dismissal is recommended based on failure to exhaust administrative remedies, the undersigned need not consider [the] defendants' alternative arguments."); see also Scott v. Uhler, 9:16-CV-403 (TJM/CFH), 2019 WL 5197139, at *6 n.10 (N.D.N.Y. July 31, 2019) ("As the undersigned concludes that [the] plaintiff has failed to exhaust his administrative remedies prior to commencing suit or that administrative remedies were unavailable to him, the undersigned declines to reach the merits of the plaintiff's claims."), report and recommendation adopted, 2019 WL 4667495 (N.D.N.Y. Sept. 25, 2019).

849 F.3d 17, 29 (2d Cir. 2017) (citing <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239, 244 (1983), and <u>Benjamin v. Fraser</u>, 343 F.3d 35, 49 (2d Cir. 2003), <u>overruled on other grounds by</u> <u>Caiozzo v. Koreman</u>, 581 F.3d 63, 70 (2d Cir. 2009)).  "A pretrial detainee's claims are evaluated under the Due Process Clause because, pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise."  <u>Id.</u> (internal quotation marks, alterations, and citations omitted).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions."  <u>Darnell</u>, 849 F.3d at 29 (citing <u>Benjamin</u>, 343 F.3d at 50).

> This means that a pretrial detainee must satisfy two prongs to prove a claim[: (1)] an "objective prong" showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[;] and [(2)] a "subjective prong"—perhaps better classified as a "mens rea prong" or "mental element prong"—showing that the officer acted with at least deliberate indifference to the challenged conditions.

<u>Id.</u> (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 836-37 (1994)).

As to the objective element, the detainee "'must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness[.]'" <u>Darnell</u>, 849 F.3d at 30 (quoting <u>Walker v. Schult</u>, 717 F.3d 119, 125 (2d Cir. 2013), and <u>LaReau v. MacDougall</u>, 473 F.2d 974, 978 (2d Cir. 1972)).  "[T]here is no static test" to determine whether a deprivation is sufficiently serious; "[t]he conditions themselves must be evaluated in light of contemporary standards of decency."  <u>Blissett v. Coughlin</u>, 66 F.3d 531, 537 (2d Cir. 1995) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981)). "When a plaintiff alleges multiple unconstitutional conditions of confinement, the court

may aggregate the effect of all of the conditions, 'but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" Van Hoven v. City of New York, No. 16-CV-2080 (GBD/DF), 2018 WL 5914858, at *7 (S.D.N.Y. Aug. 21, 2018) (quoting Walker, 717 F.3d at 125, and citing Wilson v. Seiter, 501 U.S. 294, 304 (1991)), report and recommendation adopted, 2018 WL 4417842 (S.D.N.Y. Sept. 17, 2018).  Each condition "must be measured by its severity and duration, not the resulting injury," and the conditions are not subject to "a bright-line durational or severity threshold."  Darnell, 849 F.3d at 32.

As to the subjective element,

> the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

Darnell, 849 F.3d at 35; see Van Hoven, 2018 WL 5914858, at *9 ("A pleading may thus be sufficient to plead this prong where the plaintiff alleges that the unconstitutional conditions in which he was held were actually known to the defendant or, for some plausibly stated reason, should have been known to the defendant, and that, despite this, the defendant intentionally or recklessly forced the plaintiff to endure those conditions or failed to take reasonable steps to ameliorate them.") (citing Darnell, 849 F.3d at 35, and Ashcroft v. Iqbal, 556 U.S. 662, 666 (2009)).  "In other words, the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim is defined objectively."[13]  Darnell, 849 F.3d at 35.

---

[13] "It is on . . . the 'subjective' prong of the claim . . . that the analysis diverges for plaintiffs who are convicted prisoners and those who are pretrial detainees."  Van Hoven, 2018 WL 5914858, at *7 ("In

Here, plaintiff alleges that Harder and Valls provided him "with used, stained and/or dirty underclothing" as well as "inadequate bedding and sleeping arrangements."  Am. Compl. at 15 at 7, ¶30.  He contends that both Harder and Valls acknowledged his complaints, but "no remedial action was taken."  Id. at 7, ¶31.  He asserts that their failure to provide "proper accommodations" during his detention at the Broome County Jail amounts to Fourteenth Amendment violations.  Dkt. No. 51 at 17.

Plaintiff fails to allege facts showing that he suffered an "'objectively, sufficiently serious . . . denial of the minimal civilized measure of life's necessities.'"  Willey v. Kirkpatrick, 801 F.3d 51, 66 (2d Cir. 2015) (quoting Farmer, 511 U.S. at 834).  Courts have recognized clothing as a basic human necessity, the denial of which could violate the [Constitution], and the lack of clean clothing raises personal hygiene concerns." Arce v. Coughlin, No. 93-CV-4702 (MBM), 1996 WL 252371, at *5 (S.D.N.Y. May 14, 1996) (collecting cases); see Patterson v. City of New York, No. 11-CV-7976 (DLC), 2012 WL 3264354, at *8 (S.D.N.Y. Aug. 9, 2012) ("[P]risoners are entitled under the constitution to have clothing that is clean or to have an opportunity to clean it themselves.") (internal quotation marks and citations omitted); see also Walker, 717 F.3d at 127 (explaining that the Second Circuit has "long recognized that unsanitary conditions" and "the failure to provide prisoners with . . . hygienic materials [can] rise to the level of a constitutional violation").  Further, "sleep is critical to human existence, and conditions that prevent sleep have [also] been held to violate the [Constitution]." Walker, 717 F.3d at 126; see Turner v. City, No. 16-CV-8864 (PAE/RWL), 2017 WL

---

cases brought under the Eighth Amendment, this subjective prong . . . is itself defined subjectively, in terms of what the actor actually knew, and disregarded.  In cases brought by pretrial detainees under the 14th Amendment, however, the subjective prong is defined objectively, in terms of what a reasonable person knew, or should have known.") (internal quotation marks and citations omitted).

6942760, at *2 (S.D.N.Y. Dec. 12, 2017) ("The inadequacy of a mattress may, alone or in combination with other factors, constitute an inhumane condition of confinement if it causes or threatens to cause sufficiently serious harm."), report and recommendation adopted sub nom. Turner v. City of New York, 2018 WL 401513 (S.D.N.Y. Jan. 12, 2018).

As defendants argue, "[p]laintiff has failed to set forth any evidence to suggest that he ever received dirty, used clothing or bed linen, nor has he alleged how he was specifically subjected to an unreasonable risk of serious damage to his health when he allegedly came into contact with dirty clothing and bed linen[.]"  Dkt. No. 41-6 at 9; see Dillon v. City of New York, No. 12-CV-7113 (LAP), 2013 WL 6978959, at *3 (S.D.N.Y. Nov. 18, 2013) ("[C]ourts [in this Circuit] are extremely reluctant . . . to find constitutional violations based on temporary deprivations of personal hygiene and grooming items.") (citations omitted); cf. Johnson v. Schiff, No. 17-CV-8000 (KMK), 2019 WL 4688542, at *15 (S.D.N.Y. Sept. 26, 2019) (determining that the plaintiff met "the objective prong of his conditions of confinement claim, as he [ ] alleged that he was exposed to human excrement and bodily fluids in a poorly ventilated cell over the course of multiple days") (internal quotation marks and citations omitted).  By contrast, defendants have submitted relevant pages from the Broome County Jail Inmate Handbook "address[ing] the Facility's policy and procedures with respect to clothing and linen issued to inmates, as well as the laundry exchange of such items."  Dkt. No. 41-3 at 1; see Dkt. No. 41-7 at 1-2.  The Handbook explains that plaintiff, as an inmate at the Broome County Jail, had access to clean clothing and linens.  See Dkt. No. 41-7 at 1-2 (instructing inmates on how to remove and replace dirty clothing and linens with clean clothing and linens); see

also <u>Hallett v. Davis</u>, No. 11-CV-4646 (WHP), 2012 WL 4378020, at *4 (S.D.N.Y. Sept. 25, 2012) (concluding that the pretrial detainee plaintiff failed to establish "objectively serious deprivations" because, although the defendants failed to clean the plaintiff's blanket every three months and his clothes twice a week in violation of the New York City Board of Correction Minimum Standards, the plaintiff still "had access to clean linens").

Moreover, "the record is devoid of any evidence reflecting that [plaintiff] had a medical condition that specifically required him to have a [different] bed" and "is also devoid of any evidence that the plaintiff's mattress exacerbated a pre-existing medical condition or caused a new medical condition."  Dkt. No. 41-6 at 13; <u>see</u> <u>Vazquez v. City of New York</u>, No. 21-CV-1573 (PAE/VF), 2022 WL 17370156, at *8 (S.D.N.Y. Dec. 2, 2022) (concluding that the plaintiff failed to meet the objective prong of his deliberate indifference claim because the plaintiff's "naked assertion that he suffered pain, a rash, and 'sleep deprivation' as a result of an inadequate bed or mattress, even liberally construed, is insufficient to raise a plausible claim of a constitutional violation"). Specifically, "[p]laintiff's medical file does not reflect that [he] sustained any injuries or exacerbate[d] any injuries caused by any bed at the Facility."  Dkt. No. 41-5 at 7, ¶44; <u>see</u> Dkt. No, 41-3 at 4, ¶21.  Defendants have submitted photographs to illustrate plaintiff's sleeping accommodations at the Broome County Jail, noting that "[a]ll of the beds [he] slept on" for "the vast majority of his incarceration" "were longer than his height."  Dkt. No. 41-5 at 6-7; <u>see</u> Dkt. Nos. 41-8, 41-9, 49-11, 49-12.  Moreover, plaintiff testified that "he knew the padded mattresses at the Facility were not yoga matts [sic] as he had claimed in his amended complaint."  Dkt. No. 41-5 at 7, ¶45; <u>see</u>

also Dkt. No. 41-18 at 46-47; cf. Bell v. Luna, 856 F. Supp. 2d 388, 397-98 (D. Conn. 2012) (holding that the objective prong of the plaintiff's deliberate indifference claim was met where the inmate plaintiff slept on a mattress that was torn, unstuffed, and smelled like mildew for seven months).

Given defendants' evidence, "[a]t the summary judgment stage, . . . it was incumbent on [plaintiff] to come forward with evidence showing that a genuine issue of material fact exists as to whether the [conditions at the Broome County Jail] were objectively deficient."  Brown v. City of New York, No. 21-CV-4632 (PGG/SLC), 2023 WL 2908661, at *10 (S.D.N.Y. Jan. 30, 2023), report and recommendation adopted, 2023 WL 2496089 (S.D.N.Y. Mar. 14, 2023) (citation omitted).  Plaintiff's allegations fail to meet that burden, and therefore he has not shown "objectively serious conditions [of confinement] that denied him the minimal civilized measure of life's necessities." Walker, 717 F.3d at 129; see Wilson v. Annucci, No. 18-CV-391 (LEK/TWD), 2020 WL 1979210, at *6-7 (N.D.N.Y. Apr. 23, 2020) (granting summary judgment where the incarcerated plaintiffs failed to introduce evidence showing that they were exposed to unreasonable risk of serious damage to their health), report and recommendation adopted, 2020 WL 5229375 (N.D.N.Y. Sept. 2, 2020).

"Because plaintiff's claim[s] fail[ ] under the objective prong, the [C]ourt need not reach the [subjective] prong of the deliberate indifference test."  Vernsey v. Touron, No. 9:20-CV-992 (DNH/ATB), 2023 WL 2346366, at *9 (N.D.N.Y. Feb. 8, 2023), report and recommendation adopted sub nom. Vernsey v. Tourn, 2023 WL 2346281 (N.D.N.Y. Mar. 3, 2023); see Goris v. Breslin, 402 F. App'x 582, 584 (2d Cir. 2010) (summary order) ("[W]e need not reach the subjective prong, because Goris has failed to

demonstrate that the alleged deprivation was 'sufficiently serious,' as an objective matter, to be actionable under the Eighth [or Fourteenth] Amendment.").

Thus, plaintiff has not demonstrated that a genuine issue of material fact exists as to his conditions of confinement claims.  As such, summary judgment is warranted on his Fourteenth Amendment claims against Harder and Valls.[14]  It is therefore recommended that plaintiff's Fourteenth Amendment claims against Harder and Valls be dismissed.

### D. Qualified Immunity

Defendants argue that, even if plaintiff's claims are substantiated, they are entitled to qualified immunity.  See Dkt. No. 41-6 at 19-20.  Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted).  A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation.  See

---

[14] As dismissal is recommended, the undersigned need not address defendants' alternative arguments that plaintiff's Fourteenth Amendment claims fail due to a lack of personal involvement.  See, e.g., Hogan v. Lewis Cnty., No. 7:16-CV-1325 (LEK/ATB), 2020 WL 2850162, at *9 n.7 (N.D.N.Y. June 1, 2020) ("Because the Court grants the Motion on these grounds, it need not address [the defendant's] personal involvement or qualified immunity arguments.").

Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  See Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test.  See supra Subsection III.C.  As there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation.  See Aiken, 236 F. Supp. 2d at 230; see also Smith v. Sullivan, No. 9:20-CV-659 (DNH/CFH), 2023 WL 3727447, at *19 (N.D.N.Y. May 3, 2023) ("Here, the Court need not address qualified immunity as an alternative ground to [the] defendants' summary judgment motion because [the] plaintiff has not established a dispute of material fact as to whether [the] defendants violated his constitutional rights."), report and recommendation adopted, 2023 WL 3722137 (N.D.N.Y. May 30, 2023).

## IV. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 41) be **GRANTED**, and that plaintiff's claims against David Harder, Adam Valls, and David Stanton be **DISMISSED with prejudice**; and it is

**ORDERED**, that the Clerk of the Court amend the case caption to reflect David Harder as the lead defendant; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to U.S.C. § 636(b)(1) and Local Rule 72.1(c), that the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED R. CIV P. 6(a), 6(e), 72.[15]


Dated: February 20, 2024
Albany, New York


*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[15]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  See id. § 6(a)(1)(C).