**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

NICHOLAS ROBINSON,

                          Plaintiff,

            v.
                                              No. 9:21-CV-01322
SOBIA MIRZA,                                  (DNH/CFH)


                          Defendant.

─────────────────────────────


**APPEARANCES:**                      **OF COUNSEL:**

NICHOLAS ROBINSON
22-B-0369
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, New York 12788
Plaintiff pro se

Steinberg, Symer & Platt, LLP         JONATHAN E. SYMER, ESQ.
22 IBM Road
Suite 201
Poughkeepsie, New York 12601
Attorneys for Defendant


**CHRISTIAN F. HUMMEL**
**U.S. Magistrate Judge**

**REPORT-RECOMMENDATION & ORDER**[1]

───────────────────────

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

Plaintiff pro se Nicholas Robinson ("plaintiff"), an inmate who, at all relevant times, was a pretrial detainee at Broome County Correctional Facility ("BCCF"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant Sobia Mirza, M.D. ("defendant") violated his Constitutional rights under the Fourteenth Amendment.  <u>See</u> Dkt. No. 15 ("Am. Compl.").  Presently before the Court is defendant's motion for summary judgment, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  <u>See</u> Dkt. No. 57.  Plaintiff opposed the motion.  <u>See</u> Dkt. No. 61. Defendant filed a reply.  <u>See</u> Dkt. No. 62.  Plaintiff filed a surreply.[2]  <u>See</u> Dkt. No. 63. For the following reasons, it is recommended that defendant's motion be granted.

## I. Background

On review of defendant's motion for summary judgment, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party.  <u>See</u> <u>Rattner v. Netburn</u>, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

---

[2] A surreply is not permitted without permission from the Court. <u>See</u> N.D.N.Y. L.R. 7.1(a)(1) ("A surreply is not permitted.").  However, out of special solicitude to plaintiff's pro se status, the undersigned will grant permission nunc pro tunc to consider plaintiff's submission.  <u>See</u> discussion <u>infra</u> Section II; <u>see</u> <u>also</u> <u>Jones v. Smith</u>, No. 9:13-CV-1004 (GTS/DEP), 2015 WL 1414511, at *8 n.2 (N.D.N.Y. Mar. 27, 2015) (considering the plaintiff's surreply "solely out of special solicitude to his pro se status"); <u>Jacoby v. Conway</u>, No. 10-CV-920, 2012 WL 2401578, at *1 n.1 (W.D.N.Y. June 25, 2012) (granting permission nunc pro tunc for the plaintiff to file a surreply).  Although plaintiff titled this filing as "Objection to defendant's memorandum of law in reply and further support of defendant's summary judgment motion," review of the submission reveals that it is properly designated as a surreply.  Moreover, "objections" to replies are not permitted.

**A. Plaintiff's Factual Assertions**

"Plaintiff was detained . . . as a pretrial detainee between the dates of June 6,

2020[,] and February 10, 2022[,]," at BCCF.  Am. Compl. at 4, ¶13.[3]  Plaintiff provides

that he "suffers from various mental and emotional disorders, some of which are yet

undiagnosed," and as a result, he experiences "aberrant cognitive and behavioral

processes."  Id. at 5, ¶¶18-19.

While detained at BCCF, "[p]laintiff repeatedly requested to be provided with

mental health treatment."  Am. Compl. at 5, ¶20.  Non-party Morgan Shute,[4] a Licensed

Social Worker, evaluated plaintiff "on several occasions[.]"  Id. at 5, ¶20.  Plaintiff "was

finally referred to an interview with [d]efendant, Dr. [Mirza]" after requesting a meeting

with her for "four (4) to six (6) months[.]"  Id. at 5, ¶21-22.  During defendant's

assessment, plaintiff "relayed that he was experiencing extreme anxiety, suffering some

paranoid processes, . . . experiencing symptoms of severe PTSD, [and] that he had

been sexually, emotionally, and physically abused in his youth."  Id. at 5, ¶23.  Plaintiff

believed that "he was suffering from mental health issues that effected [sic] his behavior

and relational activities to such an extent that it was causing his [sic] to get into trouble

with the staff of the Jail and suffer punishment."  Id. at 5, ¶23.  For these reasons,

"[p]laintiff requested   . . . [m]ental health treatment," at which point defendant informed

him "that the only treatment offered by the Jail for mental health was medication" and

that "counseling services were not provided."  Id. at 5, ¶¶23-24.  Defendant "determined

---

[3] The Court's citations to the parties' briefing reflects the pagination generated by the Court's electronic filing program, CM/ECF, located at the header of each page, rather than to the individual pagination of each document.
[4] Ms. Shute was dismissed from this action.  See Dkt. No. 16.

that [p]laintiff did not need medication and discharged [p]laintiff from further services."
Id. at 5, ¶24.

### B. Defendant's Factual Assertions

Defendant is a "physician duly licensed to practice medicine in the State of New York."  Dkt. No. 57-2 at 3, ¶15.  "From 2016 to present, [defendant] has served as a part[-]time psychiatrist at BCCF and during the period of plaintiff's incarceration at BCCF, [defendant] was employed by CBH Medical, P.C."  Id. at 4, ¶18.  During plaintiff's incarceration at BCCF, Licensed Social Workers ("LSWs") staffed the Mental Health Unit.  Id. at 4, ¶21.  "LSWs were qualified to conduct mental health evaluations including triaging inmates' need for evaluations by a psychiatrist."  Id. at 4, ¶22.

Upon "admission into BCCF, inmates with presenting mental health issues initially were evaluated by the LSWs to ascertain the need for mental health evaluation and care, including the need for evaluation by the psychiatrist."  Dkt. No. 57-2 at 5, ¶25. After admission, all inmates received a "detailed inmate handbook" that described "a system in place which permitted inmates to submit medical and/or mental health requests[,]" referred to as sick call.  Id. at 6, ¶30.  "To utilize the system, the inmate would provide [their] name, location, and need/reason for the request.  After daily triage of the submitted slips, mental health requests were forwarded to the LSWs who thereafter preformed evaluations of the inmates on the next work day."  Id. at 6, ¶30. "[F]ollowing the evaluation, the LSW determined whether the inmate should be placed on the list to be seen by Dr. Mirza."  Id. at 6, ¶32.  "Dr. Mirza had no role in reviewing inmate sick call requests for mental health issues and did not evaluate such inmates via

the sick call request system." Id. at 6, ¶31. If an inmate expressed "self[-]harm, suicidal ideation or assaultive behavior," they would be "placed on medical housing unit with 1:1 constant supervision . . . until the LSWs determined the need was no longer present." Id. at 5, ¶27.

"On entering BCCF, plaintiff was incarcerated on forensic hold in the Medical Unit from June 6, 2020[,] through June 15, 2020[,] as plaintiff refused to be booked into the facility." Dkt. No. 57-2 at 7, ¶34. During this hold, "[p]laintiff was evaluated by the LSWs on each work week day" and he "reported no mental health complaints." Id. at 7, ¶35. During booking into BCCF, "plaintiff reported no active prescription of mental health medications" and "had no mental health illness or diagnosis for which he actively was treating in the community prior to incarceration." Id. at 7, ¶¶36-37. Plaintiff was "cleared from forensic hold on June 15, 2020[,] and placed in general population on June 16, 2020." Id. at 7, ¶38.

"On August 17, 2020, plaintiff made threats of self[-]harm to a correction officer and was placed on a forensic hold." Dkt. No. 57-2 at 7, ¶39. "[O]n evaluation by the [sic] LSW Shute, plaintiff denied suicidal ideation." Id. at 7-8, ¶40. "In August[] 2020, . . . plaintiff was evaluated by LSWs twelve (12) separate times." Id. at 8, ¶41. With all evaluations, the LSWs determined that "plaintiff did not exhibit any clinical signs or symptoms of mental health decompensation or other serious mental health issue." Id. In August 2020, defendant attended an interdisciplinary meeting, where "it was disclosed [that] plaintiff denied all prior mental health issues" and "diagnoses but made repeated requests to be seen by the psychiatrist." Id. at 8, ¶¶ 43-44. LSWs evaluated plaintiff on five additional occasions in September 2020, "with continued requests by

plaintiff to see the psychiatrist."  Id. at 9, ¶47.  "On each evaluation . . . plaintiff had no

clinical signs of mental health decompensation" so the LSWs did "not place[] [him] on

the psychiatrist's list[,]" and defendant "did not evaluate the patient."  Id. at 9, ¶¶48-49.

Beginning in September, the LSWs "offered [plaintiff] coping skills, evaluation, and

counseling."  Dkt. No. 57-4 at 6, ¶25.

From October 19, 2020, to December 11, 2020, LSWs evaluated plaintiff four

times.  See Dkt. No. 57-2 at 10, ¶53.  "[T]he LSWs determined no clinical signs of

mental health decompensation or mental health symptoms were present"; thus, the

LSWs did not initially schedule plaintiff to see defendant.  Id. at 10, ¶53.  However,

"[s]econdary to the multiple requests and claims by plaintiff, [defendant] conducted an

in-person Initial Psychiatric Evaluation of plaintiff on December 14, 2020[,] after he was

placed on the Psychiatrist's List by [an] LSW."  Id. at 10, ¶54.

During the evaluation, "plaintiff was calm, appropriately responsive and

cooperative," "reported anger with his incarceration[,] and his varied lawsuits were

discussed at the request of [] plaintiff."  Dkt. No. 57-2 at 11, ¶¶56-57.  "[P]laintiff was

repeatedly questioned concerning suicidal thinking and he strongly denied any

suicidal/homicidal ideation, intent, plan, or any thoughts of self[-]harm."  Id. at 11, ¶60.

"Plaintiff disclosed two [e]mergency [d]epartment evaluations occurring . . . prior to the

incarceration but was not forthcoming as to the details of the two contacts."  Id. at 11-

12, ¶61.  Defendant's assessment and review of plaintiff's records led her to conclude

that the emergency department visits were "caused by methamphetamine, alcohol and

cannabis abuse."  Id. at 12, ¶62.

Defendant "performed a Mental Status Examination . . . which demonstrated plaintiff had no abnormal movements or psychomotor abnormalities." Dkt. No. 57-2 at 12, ¶64. "[P]laintiff specifically denied thought content showing: obsessions/ compulsions; delusions; suicidal ideation; and homicidal/assault ideation." Id. at 12, ¶66. Overall, the tests "demonstrated no abnormal findings." Id. at 13, ¶71. "Based on the absence of abnormal findings, Dr. Mirza did not order follow[-]up psychiatric evaluation or mental health medicines." Id. at 13, ¶73. "[Plaintiff] was offered ongoing counseling with the LSWs for coping skills or other supportive intervention. To access this followup [sic], Mr. Robinson solely needed to submit a sick call slip or mental health services request." Dkt. No. 57-4 at 8, ¶34; see also Dkt. No. 57-16 at 5. "[P]laintiff's limited requests for mental health services after December 14, 2020[,] were responded to by [LSWs] and plaintiff reported no mental health issues." Dkt. No. 57-2 at 14, ¶77.

## II. Legal Standard

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citation omitted); see FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the burden of showing the absence of a genuine dispute of material fact by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). A

fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.").

Where, as here, a party seeks judgment against a pro se litigant, the Court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). The Second Circuit has explained,

> There are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude," that a *pro se* litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases

> have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by *pro se* litigants," and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

Triestman, 470 F.3d at 477 (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### III. Arguments

### A. Plaintiff's Arguments

### 1. N.D.N.Y. Local Rules

Plaintiff contends that defendant's "Second Reply Memorandum of Law" violates this Court's Local Rules.[5]  See Dkt. No. 63 at 4, ¶4.  He alleges that defendant made this submission "in an attempt to introduce additional case law and arguments that should have been properly raised in the first Reply Memorandum of Law[,]" and that as a consequence, "the [C]ourt should dismiss their request for summary judgement [sic]." Id. at 4, ¶4.  Plaintiff argues that he "properly objected and challenged each and every allegation contained in [] defendant's motion for summary judgement [sic] and reply[,]" and that defendant misunderstood the rule.  See id. at 3, ¶3.

### 2. Fourteenth Amendment Claim

---

[5] Reading plaintiff's surreply liberally, and interpreting it to "raise the strongest arguments that [it] suggest[s,]" the undersigned interprets this argument to mean that defendant neglected to follow Local Rule 7.1(a)(1).  See N.D.N.Y. L.R. 7.1(a)(1).

Plaintiff argues that defendant violated his Fourteenth Amendment rights due to the four- to six-month delay from "the first time [p]laintiff requested mental health services until he was seen by [Dr. Mirza]." Am. Compl. at 5, ¶22. In addition, plaintiff contends that defendant further violated the Fourteenth Amendment in telling that BCCF does not offer counseling services and in failing to put him on medication. See id. at 5, ¶24. Plaintiff alleges that instead of treating him for his mental health needs, defendant "entered upon a course of conduct that punished [p]laintiff when his mental health issues manifested in behavioral discord." Id. at 8, ¶38. The alleged lack of treatment led to plaintiff displaying "abberant interrelational [sic] behavior." Id. at 8, ¶38. In addition, plaintiff's mental health issues became "increasingly worse" due to the lack of treatment. Id. at 6, ¶25. In his response in opposition, plaintiff adds that he suffers from an "ongoing mental onslaught," and that mental health treatment would have "subdued the pain and suffering that caused [] plaintiff to unconsciously act out, get paranoid, [suffer] anxiety, and [suffer] episodes of uncontrolled impulse disorder[.]" Dkt. No. 61 at 15. Plaintiff asserts that the "appointment of a doctor or nurse . . . proves that [] defendant's [sic] knew of and disregarded the result of [] plaintiff's suffering." Id. at 3, ¶9. He argues that this "deprivation of mental health treatment constitute[s] a deliberate indifference to [p]laintiff's serious medical needs." Am. Compl. at 9, ¶40.

In his surreply, plaintiff asserts that his "mental health and medical files . . . demonstrate that [] plaintiff's allegations . . . are a material issue to be tried." Dkt. No. 63 at 2, ¶1(b). Plaintiff claims that the evidence defendant submitted in support of the motion for summary judgment fails to disprove that he had a mental health problem that required treatment. See id. at 2, ¶1(c).

## B. Defendant's Arguments

### 1. N.D.N.Y. Local Rules

Defendant asserts that "plaintiff has failed to sufficiently oppose defendant's motion and therefore plaintiff's amended complaint should be dismissed with prejudice[.]" Dkt. No. 62 at 7. Specifically, she argues that plaintiff did not provide specific citations to the record in his response. See id. Defendant points out that plaintiff received was instructed to include citations to the record and was warned that the Court may dismiss his claims if he did not comply. See id. In addition, she contends that some of plaintiff's responses "are refuted by his deposition testimony." Id. at 8. Defendant further argues that, because "plaintiff was warned of the consequence of failing to properly respond . . . and has failed to do so[,]" the Court should consider the facts "admitted to the extent they are supported by accurate record citations." Id. at 9.

### 2. Fourteenth Amendment Claim

Defendant argues that "[t]here is no competent evidence [that she] acted with deliberate indifference to plaintiff's mental health care needs or that plaintiff evidenced a serious mental health care need for which he was not appropriately managed." Dkt. No. 57-3 at 5. Defendant alleges that she "has established the mental health evaluation and recommended mental health response was appropriate . . . within the standards of psychiatric care and without deliberate indifference to [plaintiff]." Id. at 10.

Defendant contends that "there cannot be a showing that [she]. . . had an objective awareness of an excessive risk of substantial harm to plaintiff." Dkt. No. 57-3

at 15.  She argues that the record shows "no LSW assessments demonstrating any acute mental health issues or mental health decompensation affecting plaintiff."  Id. at 22.  Defendant asserts that she "did not supervise the LSWs at BCCF . . . and thus, had no oversight role in determining the appropriateness of the LSWs' determinations concerning the need for evaluation by a psychiatrist."  Dkt. No. 57-4 at 2, ¶11.  She argues that the LSWs did not establish plaintiff's need for defendant to perform a psychiatric evaluation at any of the interdisciplinary meetings she attended.  See Dkt. No. 57-3 at 18.

In addition, defendant points to her evaluation of plaintiff, which she performed solely due to plaintiff's repeated requests, "showed no clinical signs of a serious mental health issue."  Dkt. No. 57-3 at 20.  Accordingly, "in keeping with good medical care, [defendant] did not prescribe mental health medications[.]"  Id. at 21.  Defendant claims that plaintiff "was offered ongoing counseling with the LSWs with coping skills and other supportive intervention."  Id. at 21.  Thus, defendant argues that, although "plaintiff might have preferred alternative treatment or believed that he did not get the medical attention he desired[, that] does not rise to the level of a constitutional violation."  Id. at 21.

## IV. Discussion

## A. N.D.N.Y. Local Rules

As an initial matter, defendant argues that plaintiff has failed to properly oppose her motion pursuant to N.D.N.Y. Local Rule 56.1(b)[6].  See Dkt. No. 62 at 7-9; see

---

[6] Defendant cites to Local Rule 7.1, but this language is now within Local Rule 56.1, as amended January 1, 2024.  See N.D.N.Y. L.R. 56.1.  For clarity, the undersigned will refer to "Local Rule 56.1."

discussion <u>supra</u> Section III.B.1; <u>see</u> <u>generally</u> N.D.N.Y. L. R. 56.1.  Local Rule 56.1(b)

provides:

> The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises. <u>The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u>

N.D.N.Y. L.R. 56.1(b).  Where a party has failed to respond properly to the movant's

statement of material facts, those facts will be accepted as true "(1) to the extent they

are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se,

has been specifically advised of the possible consequences of failing to respond to the

motion."  <u>Quezada v. Fischer</u>, No. 9:13-CV-00885 (MAD/TWD), 2017 WL 9509993, at

*3 (N.D.N.Y. Aug. 31, 2017) (citing <u>Champion v. Artuz</u>, 76 F.3d 483, 486 (2d Cir. 1996)),

<u>report</u> <u>and</u> <u>recommendation</u> <u>adopted sub</u> <u>nom.</u> <u>Quezada v. Gutwein</u>, 2017 WL 4286304

(N.D.N.Y. Sep. 27, 2017). [7]

However, there is an "obligation on the part of the court to make reasonable

allowances to protect pro se litigants from inadvertent forfeiture of important rights due

to their lack of legal training."  <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983); <u>see</u>

discussion <u>supra</u> Section II; <u>Phillips v. Girdich</u>, 408 F.3d 124, 128 (2d Cir. 2005) ("We

will therefore excuse technical pleading irregularities as long as they neither undermine

the purpose of notice pleading nor prejudice the adverse party.").

---

[7] Copies of any unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

In support of her motion for summary judgment, defendant filed a Statement of Material Facts.  See Dkt. No. 57-2.  The Court instructed plaintiff that he must admit or deny defendant's facts in his response with citations to the record.  See Dkt. No. 58. Plaintiff filed a response to defendant's motion, wherein he "acknowledge[d]," "object[ed]," and "challenge[d]" certain statements in corresponding paragraphs but failed to set forth any specific citations to the record to support his responses.  See Dkt. No. 61.  As defendant points out, the Court has enforced Local Rule 56.1 in cases where the plaintiffs failed to properly respond.  See Dkt. No. 62 at 8; see Elgamil v. Syracuse Univ., No. 99-CV-611 (NPM/GLS), 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000); Garrett v. Reynolds, No. 9:99-CV-2065 (NAM/GLS), 2003 WL 22299359, at *3 (N.D.N.Y. Oct. 7, 2003) (explaining that due to the plaintiff pro se's lack of response to the motion for summary judgment, the Court accepted the defendant's facts as true); Govan v. Campbell, 289 F. Supp. 2d 289, 295-6 (N.D.N.Y. Oct. 29, 2003) ("[Plaintiff] did not file a statement of undisputed material facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the properly-supported facts contained in the defendants' [] statement as true for purposes of this motion." [8]) (internal citations omitted).

However, such determinations are made on a case-by-case basis.  Here, in deference to plaintiff's pro se status, the undersigned finds it appropriate here to independently review the record when evaluating defendant's motion for summary judgment and "treat [plaintiff's] opposition as a response to" defendant's Statement of Material Facts. Johnson v. Lew, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at

---

[8] This case was decided prior to the amendment of Local Rule 7.1(a)(3).

*2 (N.D.N.Y. Aug. 30, 2017) ("Out of special solicitude to [the p]laintiff as a *pro se* civil rights litigant, . . . the Court will treat his opposition as a response to [the d]efendant's [] Statement, carefully reviewing it for any record-supported disputation of [the d]efendant's [] Statement."); see Quezada, 2017 WL 9509993, at *3 ("In deference to [the p]laintiff's *pro se* status and the degree of effort he clearly put into his response to [the d]efendants' statement of material facts, the Court has opted to review the entire record in determining if there are material facts in dispute."); Latouche v. Tompkins, No. 9:09-CV-308 (NAM/RFT), 2011 WL 1103045, at *2 (N.D.N.Y. Mar. 23, 2011) ("In light of his pro se status and the preference to resolve disputes on the merits rather than 'procedural shortcomings' . . . the Court will consider those facts in the context of the within motion.").

Plaintiff argues in his surreply that defendant's "Second Reply Memorandum of Law" violates Local Rule 7.1(a)(1)[9] of the Court.  See Dkt. No. 63 at 4, ¶4; see discussion supra Section III.A.1.  Local Rule 7.1(a)(1) provides that when filing dispositive motions, the moving party must file motion papers with the Court and serve them upon any pro se parties.  See N.D.N.Y. L.R. 7.1(a)(1).  The nonmovant then has twenty-one days to file and serve opposition papers.  See id.  Following that, "[t]he moving party must file and serve its reply papers, if any. . . no more than SEVEN (7) DAYS after service of the response papers."  Id.  Thus, a reply is allowed, but a surreply is not.  See id.  Plaintiff appears to believe that defendant's submission at docket number 62 is a surreply; however, it is a reply.  See generally Dkt. No. 62.  Defendant, as the the moving party, filed her motion for summary judgment; plaintiff filed a

---

[9] See supra n.5.

response in opposition;  and defendant thereafter filed a reply, which is the submission

at docket number 62.  Thus, despite the submission's confusing title, defendant's

"Second Reply Memorandum of Law" is not a surreply and is not in violation of the Local

Rules.  See generally id.; see N.D.N.Y. L.R. 7.1(a)(1).


## B. Fourteenth Amendment Claim

The Due Process Clause of the Fourteenth Amendment governs a pretrial

detainee's claims of unconstitutional conditions of confinement.  See Darnell v. Pineiro,

849 F.3d 17, 29 (2d Cir. 2017).  This is because "[p]retrial detainees have not been

convicted of a crime and thus may not be punished in any manner– neither cruelly and

usually nor otherwise."[10]  Id.  (internal quotation marks and citations omitted).  This does

not impact a pretrial detainee's ability have his constitutional claims reviewed because

"[a] detainee's rights are 'at least as great as the Eighth Amendment protections

available to a convicted prisoner.'"  Id. (quoting City of Revere v. Mass. General Hosp.,

463 U.S. 239, 244 (1983)).

A Fourteenth Amendment deliberate indifference claim must satisfy a two-prong

test.  See Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (abrogated on other

grounds as recognized by Kravitz v. Purcell, 87 F.4th 111, 119-22 (2d Cir. 2023)). "[N]ot

every lapse in medical care is a constitutional wrong."  Id.  "The first requirement is

objective: the alleged deprivation of adequate medical care must be 'sufficiently

---

[10] Before the Supreme Court of the United States' decision in Kingsley v. Hendrickson, the analyses of
Eighth and Fourteenth Amendment deliberate indifference claims was the same.  See Darnell, 849 U.S.
at 35; Kingsley v. Hendrickson, 576 U.S. 389, 389 (2015).  In Kingsley, the Supreme Court "concluded
that excessive force claims brought under the Fourteenth Amendment do not require the same subjective
intent standard as excessive force claims brought under the Eighth Amendment[.]"  Darnell, 849 U.S. at
32; see Kingsley, 576 U.S. at 389.  This changes only the analysis of the second prong of the test.  See
Darnell, 849 U.S. at 35.

serious.'"  Id. (internal quotation marks omitted).  "The second requirement . . . is subjective: the charged [defendant] must act with a sufficiently culpable state of mind." Salahuddin, 467 F.3d at 279.  A defendant must have acted with "deliberate indifference to a substantial risk of serious harm to an inmate."  Farmer v. Brennan, 511 U.S. 825, 828 (1994) (internal quotation marks omitted).


### 1. Objective Component

The first prong of the test requires a "fact-intensive inquiry" to determine if the offending conduct meets the burden of being objectively "sufficiently serious."  Darnell, 849 F.3d at 31.  This requires the Court to assess: (1) "whether the prisoner was actually deprived of adequate medical care," and (2) "whether the inadequacy in medical care is sufficiently serious."  Salahuddin, 467 F.3d at 279-280.  First, a "prison official's duty is *only* to provide *reasonable* care"; thus, "'prison officials who act reasonably [in response to an inmate health or safety risk] cannot be found liable.'"  Id. at 279 (quoting Farmer, 511 U.S. at 845) (emphasis added).  "A prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]'"  Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

Second, "[a] serious medical condition must be 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'"  Osacio v. Greene, No. 08-CV-0018, 2009 WL 3698382, at *4 (N.D.N.Y. Nov. 2, 2009) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994)).  "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be

evaluated in light of contemporary standards of decency.'" <u>Darnell</u>, 849 F.3d at 30

(quoting <u>Blissett v. Coughlin</u>, 66 F.3d 531, 537 (2d Cir. 1995)). Courts have considered

factors such as "[t]he existence of an injury that a reasonable doctor or patient would

find important and worthy of comment or treatment; the presence of a medical condition

that significantly affects an individual's daily activities; or the existence of chronic and

substantial pain." <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998). "[E]ach

complaint is different, and courts have the power and duty to dismiss complaints that

contain only conclusory, frivolous, or implausible allegations." <u>Walker v. Schult</u>, 717

F.3d 119, 130 (2d Cir. 2013).

"If the 'unreasonable care' consists of a failure to provide *any* treatment, then the

court examines whether the inmate's condition itself is 'sufficiently serious.'" <u>Vernsey v.</u>

<u>Touron</u>, No. 9:20-CV-992 (DNH/ATB), 2023 WL 2346366, at *3 (N.D.N.Y. Feb. 8, 2023)

(quoting <u>Salahuddin</u>, 467 F. 3d at 279 and citing <u>Smith v. Carpenter</u>, 316 F.3d 178, 185-

86 (2d Cir. 2003)), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u> <u>sub</u> <u>nom.</u> <u>Vernsey v. Tourn</u>,

2023 WL 2346281 (N.D.N.Y. Mar. 3, 2023). Where the allegations relate to a delay or

interruption in medical treatment, "the inquiry is narrower." <u>Id.</u> (citing <u>Salahuddin</u>, 467

F.3d at 279). In such a case, "the 'seriousness' inquiry focuses on the challenged delay

itself, rather than on the underlying condition alone." <u>Id.</u> (citing <u>Smith</u>, 316 F.3d at 185);

<u>see</u> <u>also</u> <u>Yancy v. Robertson</u>, No. 9:17-CV-0381 (BKS/CFH), 2018 WL 7114888, at *5

(N.D.N.Y. Dec. 7, 2018), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2019 WL 315048

(N.D.N.Y. Jan. 24, 2019).

"Depending on their severity, psychiatric or psychological conditions can present

serious medical needs in light of our contemporary standards." <u>Charles v. Orange</u>

Cnty., 925 F.3d 73, 86 (2d Cir. 2019).  "In the context of mental health needs,
propensities to attempt suicide, harm oneself, and/or exhibit severe depression or
anxiety attacks have been viewed as 'sufficiently serious.'"  Johnson v. Cook, No. 3:19-
CV-1464 (CSH), 2021 WL 2741723, at *13-14 (D. Conn. July 1, 2021) (quoting Young
v. Choinski, 15 F. Supp. 3d 194, 199 (D. Conn. 2014)); see Davis v. Malloy, No. 3:16-
CV-1614 (JAM), 2017 WL 20912, at *2 (D. Conn. Jan. 2, 2017) (dismissing the plaintiff's
claim of deliberate indifference to mental health needs due to the omission of details
regarding his diagnoses, what treatment he was denied, and what harm he encountered
from lack of treatment).

   First, the undersigned concludes that plaintiff was not "actually deprived of
adequate medical care."  Salahuddin, 467 F.3d at 279.  The LSWs consistently
responded to plaintiff's requests to be evaluated and found no signs of mental
decompensation.  See Dkt. No. 57-2 at 8, ¶41; Dkt. No. 57-2 at 9, ¶48.  The LSWs
determined, in their professional opinions, that it was unnecessary to put plaintiff on
defendant's list for a psychiatric evaluation.  See id. at 8, ¶41-41; id. at 9, ¶48-49.  The
LSWs and defendant continued discussing plaintiff at interdisciplinary meetings, where
the LSWs established no need for a psychiatric evaluation.  See id. at 8, ¶43-44; id. at
9, ¶50.  Defendant only evaluated patients that the LSWs referred to her, and she had
no oversight in LSW evaluations.  See id. at 6, ¶31; Dkt. No. 57-4 at 2, ¶11.  Once the
LSW referred plaintiff to her, she evaluated him.  See Dkt. No. 57-2 at 10, ¶54.  Given
the LSWs' repeated evaluations, the absence of a referral to defendant until December
(which she compelted), and the lack of evidence indicating any mental health
decompensation requiring psychiatric care, the undersigned concludes that plaintiff fails

to show that defendant actually deprived him of adequate medical care.  See Dkt. No.

57-2 at 7-13; see also Vernsey, 2023 WL 2346366, at *8 (holding that the defendant's

limited response to the plaintiff's repeated attempts to speak to mental health staff was

not deliberate indifference to his serious medical needs because "mental health

intervention was neither appropriate nor necessary").  Additionally, in contrast to

plaintiff's unsupported allegation otherwise, the record indicates that the LSWs offered

counseling services in September, and defendant offered counseling services following

her evaluation.  See Dkt. No. 57-4 at 6, ¶25; Dkt. No. 57-4 at 8, ¶34; Dkt. No. 57-16 at 5

(indicating that defendant checked off "supportive counseling" for treatment

recommendation and plan following plaintiff's evaluation on December 14, 2020); see

also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or

denials are ordinarily not sufficient to defeat a motion for summary judgment when the

moving party has set out a documentary case."); Carey v. Crescenzi, 923 F.2d 18, 21

(2d Cir.1991) (noting that conclusory allegations, unsupported by the record, are

insufficient to defeat summary judgment).[11]

Second, plaintiff's alleged harm does not meet the burden of being "sufficiently

serious[.]"  Darnell, 849 F.3d at 31.  Although the Second Circuit has acknowledged that

mental illnesses may present sufficiently serious medical needs, the actual medical

harm that results from the illness is highly relevant to the determination.  See Charles,

925 F.3d at 86; Smith, 316 F.3d at 187; Young, 15 F. Supp. 3d at 183-184 (holding that

---

[11] Indeed, although plaintiff argues that defendant told him that counseling services were not available, this bare allegation is insufficient to create a material question of fact sufficient to defeat summary judgment where the record, including a contemporaneously created medical record, shows that such services were available and offered.  See Dkt. No. 57-4 at 6, ¶25; Dkt. No. 57-4 at 8, ¶34; Dkt. No. 57-16 at 5.

a minor, self-inflicted wound, causing the plaintiff no interference with daily activities and no substantial/chronic pain, was not sufficiently serious); Zimmerman v. Burge, No. 9:06-CV-0176 (GLS/GHL), 2009 WL 9054936, at *6 (N.D.N.Y. Apr. 20, 2009) (holding that diagnosed major depression with suicidal ideation, resulting in a suicide attempt, was a sufficiently serious medical need), report and recommendation adopted, 2009 WL 3111429 (N.D.N.Y. Sep. 24, 2009); McEachin v. Faruki, No. 9:03-CV-1442 (LEK/DRH), 2006 WL 721570, at *3 (N.D.N.Y. Mar. 20, 2006) ("[The plaintiff] fails to demonstrate that he suffered from a serious medical need.  Although [the plaintiff] was diagnosed with antisocial personality disorder, this condition does not constitute a serious medical illness.") (citation omitted); Randle v. Alexander, 960 F. Supp. 2d 457, 481 (S.D.N.Y. 2013) (holding that the plaintiff with a documented history of serious mental illness, who was left untreated to the point that he heard voices, attempted suicide, contemplated violent acts, and was severely traumatized, demonstrated a sufficiently serious medical need).

Plaintiff alleges that the harm resulting from defendant's alleged deliberate indifference was an "ongoing mental onslaught" and "aberrant interrelational [sic] behavior[.]"  Dkt. No. 61 at 15; Am. Compl. at 6, ¶25.  Further, he alleges that, had defendant provided "a proper diagnosis or medication[,]" she "could have subdued the pain and suffering of the illness that caused plaintiff to unconsciously act out, get paranoid, anxiety, and episodes of uncontrolled impulse disorder[,]" which he claims is a result of his "schizophrenic nature[.]"  Dkt. No. 61 at 15.  Although plaintiff intermittently reported "sadness, anger, 'hearing voices' or 'seeing shadow figures[,]"  Dkt. No. 57-4 at

5, ¶30, records indicate that from August 2020, through December 2020, over the course of twenty-one evaluations, the LSWs saw no clinical signs of mental health decompensation or mental health symptoms present.  See Dkt. No 57-2 at 8, ¶41; Dkt. No. 57-2 at 9, ¶47-48; Dkt. No. 57-2 at 10, ¶53.  Plaintiff denied suicidal ideation on multiple occasions.  See id. at 7-8, ¶40 (on August 17, 2020, he denied suicidal ideation during LSW Shute's evaluation); see id. at 12, ¶66 (on December 14, 2020, he denied suicidal ideation upon examination by defendant).  On December 14, 2020, defendant examined plaintiff and found that:

> [P]laintiff reported no familial issues or prior symptomology consistent with major depression, obsessive-compulsive disorder, bipolar mania or hypomania or an acute psychotic episode. He denied any perceptual disturbances (audio or visual). [Her] assessment was that there was no clinical manifestation of any acute psychiatric symptomology or issue at that time.

Dkt. No. 57-4 at 7, ¶30.

Although plaintiff contends that he suffers from "extreme anxiety . . . some paranoid processes . . . symptoms of severe PTSD . . . [and] mental health issues that effected [sic] his behavior and relational activities . . . [,]" he has provided no evidence of these, or any other, mental health diagnoses from a medical professional that were in effect during the time of his confinement at BCCF.  See Am. Compl. at 5, ¶23; Dkt. No. 57-2 at 8-13; see also Bilal v. White, 494 F. App'x 143, 146 (2d Cir. 2012) (summary order) ("[The plaintiff's] mere recitation of the formula that he suffered 'extreme pain' is insufficient to raise an issue of fact as to whether the delay of the pain medication was sufficiently serious[.]").  Due to the lack of any mental health assessments or other evidence pointing to any formal mental health diagnoses or conditions present during

the time in question, and the vagueness of plaintiff's alleged medical harm that he alleged resulted from defendant's alleged failure to treat him, plaintiff has failed to establish that his medical needs were sufficiently serious.  See Darnell, 849 F.3d at 31; see also Bryant v. Miller, No. 9:18-CV-494 (GTS/CFH), 2021 WL 5095284, at *4 (N.D.N.Y. July 22, 2021) (holding that the plaintiff's diagnosis of antisocial personality disorder did not constitute a serious medical illness, and noting that (1) the plaintiff's medical records lacked evidence of psychotic symptoms, and (2) the plaintiff's doctor explained that the plaintiff did not exhibit any signs of major depression), report and recommendation adopted, 2021 WL 4272396 (N.D.N.Y. Sep. 21, 2021).

Further, plaintiff suggests that the delay of four to six months between when he first requested a psychiatric evaluation with Dr. Mirza and when she conducted that evaluation on December 14, 2020, also amounts to deliberate indifference of his serious medical needs.  See Am. Compl. at 5, ¶22.  Plaintiff alleges that his "mental health issues became increasingly worse[,]" but there is no evidence, apart from this unsupported claims, to demonstrate that plaintiff's condition worsened due to the delay in Dr. Mirza's evaluation.  See id. at 6, ¶25.  On the contrary, the record shows that in all twenty-one LSW assessments during this "delay period," plaintiff displayed no clinical signs of mental health decompensation or mental health symptoms.  See Dkt. No 57-2 at 8, ¶41; Dkt. No. 57-2 at 9, ¶47-48; Dkt. No. 57-2 at 10, ¶53.  In addition, defendant's eventual evaluation revealed "no clinical manifestation of any . . . mental health issue." Dkt. No. 57-2 at 13, ¶72; see Vernsey, 2023 WL 2346366 (citing R.T. v. Gross, 298 F. Supp. 2d 289, 296-97 (N.D.N.Y. 2003) (citing Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part by Hope v. Pelzer, 536 U.S.

730, 739 n.9 (2002) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.")).

Accordingly, plaintiff has not demonstrated that genuine issues of material fact exist to show that he was "actually deprived of adequate medical care" or that he suffered harm that was "sufficiently serious."  Salahuddin, 467 F.3d at 279-280.


## 2. Subjective Component

The subjective prong is "perhaps better classified as a 'mens rea prong' or 'mental element prong[.]'"  Darnell, 849 F.3d at 29.  "A prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to 'serious' medical needs[,]" which requires a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle, 429 U.S. at 106).  "[T]he defendant must have behaved in an objectively reckless manner, or 'knew, or should have known, that the condition posed an excessive risk to health or safety.'"  Taft v. Fricke, No. 9:17-CV-0346 (GTS/CFH), 2019 WL 5197180, at *8 (N.D.N.Y. July 26, 2019) (quoting Darnell, 849 F.3d at 35), report and recommendation adopted, 2019 WL 4744225 (N.D.N.Y. Sep. 30, 2019).

Additionally, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim."  Chance, 143 F.3d at 703; see Armstrong v. Miller, No. 9:16-CV-0478 (GLS/CFH), 2016 WL 3149733, at *5 (N.D.N.Y. June 3, 2016) (holding that the defendant's decision to change the plaintiff's mental health medication and diagnosis was nothing more than mere disagreement over medical treatment, which is insufficient to create a constitutional claim); Hill v. Curcione,

657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.").

Here, plaintiff argues that defendant "chose not to give [] plaintiff [a] proper diagnosis or medication treatment," even though she possessed the "requisite knowledge" to understand that he needed "medications and treatment." Dkt. No. 61 at 14-15; see discussion supra Section III.A.2. Defendant argues that "there cannot be a showing that [she] . . . had an objective awareness of an excessive risk of substantial harm to plaintiff." Dkt. No. 57-3 at 15; see discussion supra Section III.B.2. The undersigned agrees with defendant.

The record does not indicate that defendant knew of and disregarded some "excessive risk" to plaintiff's health or safety. Dkt. No. 57-2 at ¶10; Farmer, 511 U.S. at 837. During the two interdisciplinary meetings, the providers and Dr. Mirza discussed plaintiff and concluded that he "did not display any clinically established mental health symptoms"; thus, "the plan was re-evaluation by the LSWs and psychiatric referral upon exhibiting clinical symptomology." Dkt. No. 57-2 at 8-9, ¶¶43-46. As repeatedly noted, defendant had no supervising role over the LSWs or their assessments. See Dkt. No. 57-4 at 2, ¶11. Defendant's comprehensive mental health status examination – which she completed due to plaintiff's "repeated claims" rather than to any medical necessity – revealed "no abnormal findings[,]" and she found "no clinical manifestation of any acute psychiatric symptomology or mental health issue." Dkt. No. 57-4 at 6, ¶26; Dkt. No. 57-2 at 13, ¶¶71-72. In defendant's professional opinion, plaintiff "presented with no mental health issues warranting further treatment." Dkt. No. 57-4 at 8, ¶38.

Although plaintiff disagrees with defendant's assessment and treatment strategy, this disagreement does not state a claim for deliberate indifference. See Chance, 143 F.3d at 703; Armstrong, 2016 WL 3149733, at *5; Hill, 657 F.3d at 123. However, even if, arguendo, defendant erred in her assessment of plaintiff's mental health condition, considering plaintiff's failure to report a mental health history, an absence of any mental health diagnosis at the time, and a lack of any mental health symptomology during this many evaluations by the LSWs, that error would be, at most, a "failing[] in professional judgment, not deliberate indifference." Estate of King by and through King v. Annucci, No. 9:20-CV-1413 (TJM/ML), 2023 WL 6122868, at *12 (N.D.N.Y. Sept. 19, 2023); see Robinson v. Taylor, No. 9:16-CV-285 (DJS), 2019 WL 1429529, at *6 (N.D.N.Y. Mar. 29, 2019) (holding that the defendant, who had no reason to believe an inmate had mental health issues, is not responsible for that inmate self harming because the defendant was exercising his medical judgment).

Accordingly, plaintiff has not demonstrated that a genuine issue of material fact exists regarding defendant's alleged acts or omissions on the mens rea requirement of the second prong. In sum, he has failed to establish that defendant was deliberately indifferent to his serious medical needs.

## V. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 57) be **GRANTED**, and that plaintiff's claim against defendant Sobia Mirza be **DISMISSED WITH PREJUDICE**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).[12]

Dated: July 30, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[12] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report- Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).